

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00303-CR

SETH MICHAEL DONNELLY                                         APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1311950R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Seth Michael Donnelly appeals from his conviction and twelve-year sentence for intoxication manslaughter.  We affirm.

## I. BACKGROUND

On October 3, 2012, Detective Ross Lyons with the Fort Worth Police Department saw a truck speeding through an intersection.  The truck drove over

---

[1]*See* Tex. R. App. P. 47.4.

the median and spun around, nearly hitting another car, before speeding off. Lyons turned on his patrol lights and "tried to keep up" with the speeding truck. The truck then ran a red light at an approximate speed of eighty miles per hour in a thirty-five-mile-per-hour zone. At the next red light, the truck hit a motorcycle that was stopped at the light, without slowing down. The crash caused an explosion that threw the motorcycle driver—Richard Lynn—fifteen to twenty feet into the air, killing him instantly. Officer Mario Caballo, who came upon the accident from the opposite direction, began pursuing the truck. Lynn's motorcycle was embedded upright into the hood of the truck. The truck stopped about 150 to 200 yards from the crash site, and the driver—Donnelly—got out and tried to run to a nearby fence. Caballo caught Donnelly, who smelled of alcohol, and placed him in handcuffs. When Officer Lance Bachim arrived to assist Caballo, Donnelly was "passed out" and would not wake up when Bachim tried to rouse him. As paramedics arrived to treat Donnelly, he woke up.

When Donnelly regained consciousness, he had bloodshot eyes, did not know where he was, asked what had happened, refused to cooperate with the paramedics, and claimed he had been driving a motorcycle when police officers ran over him in a truck. Donnelly's injuries—abrasions on his forehead—were not consistent with his claim that he was driving the motorcycle. The police officers on the scene told the paramedics to take Donnelly to the hospital. Donnelly physically resisted the paramedics' attempts to get him on a gurney and immobilize his head in case he had a head or neck injury. Donnelly was

2

confused, would not answer the paramedics' questions, and repeatedly shouted, "Don't shoot me. Don't kill me." Bachim accompanied Donnelly in the ambulance. In the ambulance, Donnelly continued to "try to sit up on the gurney and . . . to pull away from medical personnel." Donnelly began threatening Bachim, telling him he would make sure Bachim lost his job and that he was going to rape Bachim's wife, calling her a whore.

Officer Dale McCoy, a specialized DWI police officer, met Donnelly and Bachim at the hospital and attempted to perform a horizontal-gaze-nystagmus test on Donnelly. Donnelly refused to cooperate. McCoy, however, concluded Donnelly was intoxicated because he had watery eyes, slurred speech, and smelled of alcohol. McCoy, in Bachim's presence, read Donnelly the required, statutory warnings and asked him to submit to the taking of a blood specimen.[2] *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2014). Both McCoy and Bachim averred that Donnelly verbally consented and never withdrew that consent. After Donnelly's blood was drawn, McCoy asked Donnelly to sign the consent form but Donnelly repeatedly began saying "kill me" and would not sign. The blood specimen revealed that Donnelly's blood-alcohol content was 0.25, more than three times the legal limit. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

---

[2]This exchange could not be recorded because McCoy read the warnings to Donnelly at the hospital.

A grand jury indicted Donnelly with intoxication manslaughter. *See id.* § 49.08 (West 2011). Donnelly elected to have a jury assess his punishment and pleaded guilty to the offense. He affirmed in open court that he was pleading guilty voluntarily and solely because he was actually guilty of intoxication manslaughter. At punishment, Donnelly testified that he drank more than fifteen beers and half of a bottle of rum at a friend's house on October 3, 2012 before he blacked out. The next thing he remembered was waking up in a jail cell. The jury assessed his punishment at twelve years' confinement. Donnelly appeals and argues that the blood specimen was taken in violation of his Fourth Amendment rights, trial counsel was constitutionally ineffective, and the trial court erred by admitting two photographs of Lynn lying in the street after the crash.

## II. DISCUSSION

### A. BLOOD SPECIMEN

In his first issue, Donnelly argues that the blood specimen was taken in violation of his rights under the Fourth Amendment. Donnelly asserts that the blood-test results were inadmissible because his blood was drawn under the mandates of an unconstitutional statute authorizing blood draws under certain circumstances even in the absence of a warrant or an exception to the warrant requirement. *See* Tex. Transp. Code Ann. § 724.012(b) (West 2011); *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *20–21 (Tex. Crim. App. Nov. 26, 2014) (5–4 opinion) (holding mandatory-blood-draw and implied-consent provisions of transportation code violate Fourth Amendment to the

4

extent specimen taken without a warrant or an exception to the warrant requirement), *reh'g granted*, No. PD-0306-14 (Feb. 25, 2015).

First, Donnelly procedurally defaulted his complaint regarding admission of the blood-test result by failing to file a motion to suppress, object to the admission of the test result at trial, or otherwise raise the argument in the trial court.  *See* Tex. R. App. P. 33.1(a); *Segurola v. United States*, 275 U.S. 106, 111, 48 S. Ct. 77, 79 (1927); *Martinez v. State*, 17 S.W.3d 677, 682–83 (Tex. Crim. App. 2000).  Second, Donnelly verbally consented to the blood draw, which is a well-recognized exception to the warrant requirement.[3]  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973).  The blood draw did not violate the Fourth Amendment.  We overrule issue one.

### B.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Donnelly argues that counsel was constitutionally ineffective by (1) failing to object to admission of the blood-test result, (2) failing to raise or correctly state the law regarding the mitigating factor of temporary insanity at punishment, and (3) advising Donnelly to plead guilty.

The test to determine the effectiveness of counsel requires Donnelly to show by a preponderance of the evidence that (1) counsel's representation fell below the standard of prevailing professional norms and (2) there is a reasonable

---

[3]Donnelly argues in his brief that he did not consent to the blood draw.  But Donnelly cites to no portion of the record supporting this factual assertion and does not attempt to reconcile or attack McCoy's and Bachim's testimony that Donnelly verbally consented to the blood draw.

probability that, but for these unprofessional errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S. Ct. 2052, 2064–65 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Counsel was not deficient for failing to object to the admission of the blood-test results. Donnelly consented to the blood draw; thus, there was no Fourth-Amendment basis upon which to challenge the admission of this evidence.

Further, the record is silent as to counsel's reasons for failing to object, which precludes a conclusion that counsel was deficient.[4]  *See id.*; *Deer v. State*, No. 02-10-00443-CR, 2012 WL 42954, at *3 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op., not designated for publication).

Likewise, counsel was not deficient in his actions regarding temporary insanity and voluntary intoxication.  Although voluntary intoxication is not a defense to the commission of a crime, temporary insanity caused by intoxication may be introduced in mitigation of punishment.  *See* Tex. Penal Code Ann. § 8.04(a)–(b) (West 2011).  Donnelly argues that counsel misstated the law regarding voluntary intoxication during closing arguments when he stated that "[v]oluntary intoxication . . . is not a justification for the crime, and that's why [Donnelly] pled guilty to you."  This is a correct statement of the law and does not show any deficient performance by counsel.  Further, counsel argued to the jury that although voluntary intoxication was no defense to commission of the crime, the jury could "use that fact that he did not intend to hurt anybody as what we call mitigation.  And you can consider that in the punishment of the offender."

---

[4]Indeed, Donnelly testified that he drank a copious amount of alcohol the day of the crash, which lessens any harmful impact the blood-test results would have had on the jury.  *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Calbas v. State*, No. 01-13-00128-CR, 2014 WL 2809809, at *10 (Tex. App.—Houston [1st Dist.] June 19, 2014, pet. ref'd) (mem. op., not designated for publication) (holding even if  warrantless blood-draw evidence erroneously admitted, admission harmless because same information admitted without objection through defendant's medical records and nurse's testimony).

Donnelly also seems to argue that counsel was ineffective for failing to request an instruction on temporary insanity caused by intoxication. The record is absolutely silent as to counsel's reasons for failing to request such an instruction, and we will not presume deficient performance in the absence of such evidence. *See Hernandez v. State*, 726 S.W.2d 53, 57–58 (Tex. Crim. App. 1986); *Deer*, 2012 WL 42954, at *4; *cf. Lugo v. State*, 732 S.W.2d 662, 667 (Tex. App.—Corpus Christi 1987, no pet.) (holding evidence intoxicated defendant did not remember stabbing victim did not raise the issue of insanity). Additionally, "for a defendant to benefit from the provisions of [section] 8.04 he must do more than merely present evidence of intoxication or even gross intoxication" by proffering evidence that he either did not know his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he violated. *Arnold v. State*, 742 S.W.2d 10, 14, 16 (Tex. Crim. App. 1987). Counsel could have reasonably determined that section 8.04(b) was inapplicable on this basis, which negates any deficient-performance claim. *See Aldaba v. State*, 382 S.W.3d 424, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd), *cert. denied*, 559 U.S. 979 (2010).

Donnelly finally argues counsel was ineffective because he "encouraged him to plead guilty since the State had a strong case against him." This argument rests on his assertion that counsel should have hired an expert to testify to Donnelly's "alcoholic amnesia" and thereby raise to the jury Donnelly's temporary insanity caused by intoxication at punishment. As we previously

discussed, Donnelly's voluntary intoxication had no relevance to whether he committed the underlying offense of intoxication manslaughter. Thus, any advice counsel gave regarding the strength of the State's case of Donnelly's guilt was not affected by Donnelly's voluntary intoxication. Further, the record gives no explanation for counsel's reasons for advising Donnelly to plead guilty, and we will not presume deficient performance in the absence of such explanation, especially where Donnelly affirmed in open court that his guilty plea was freely and voluntarily made. *See Odelugo v. State*, No. 01-12-00521-CR, 2015 WL 1062560, at *5 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no pet. h.) (mem. op. on remand, not designated for publication); *Labib v. State*, 239 S.W.3d 322, 335 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We overrule issue two.

## C. ADMISSION OF PHOTOGRAPHS

Donnelly next contends that the trial court erred by admitting two photographs of Lynn after the crash, which showed Lynn lying dead in the street with his clothes ripped and askew.[5] Donnelly objected at trial to the State's proffer of several crime-scene photographs on the bases that the photographs had an unfairly prejudicial effect on the jury and were needlessly cumulative of other, admitted evidence regarding Lynn's injuries. *See* Tex. R. Evid. 403. But after the State pared down its proffer to only two crime-scene photos of Lynn

---

[5]Donnelly asserts in his brief that Lynn is "naked" in the photographs, but he is not completely unclothed.

lying in the street, Donnelly withdrew his objection to the two photographs. Thus, Donnelly procedurally defaulted this claim.[6] *See* Tex. R. App. P. 33.1(a); *Salazar v. State*, 38 S.W.3d 141, 147 n.3 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *Morin v. State*, No. 13-01-00001-CR, 2002 WL 1025518, at *2 (Tex. App.—Corpus Christi May 23, 2002, pet. ref'd) (mem. op., not designated for publication). We overrule issue three.

## III. CONCLUSION

Having overruled Donnelly's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 28, 2015

---

[6]Even if not procedurally defaulted, we would conclude that the trial court did not abuse its discretion in admitting the two photographs because they were relevant to sentencing and helpful to the jury. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2014); *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004).

10